IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DUSTY F.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

Case No. 2:24-cv-00879-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Dusty F. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in June 1977, plaintiff alleges disability beginning May 13, 2021[3] due to arthritis, bone disease, diabetes, and tentinitis. Tr. 39, 353. Her application was denied initially and upon reconsideration. On June 5, 2023, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 36-78. On June 28, 2023, the ALJ issued a decision finding plaintiff not disabled. Tr. 28-29. After the Appeals Council denied her request for review, plaintiff filed a complaint in this court. Tr. 1.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the originally alleged onset date. Tr. 18. At step two, the ALJ determined the following impairments were medically determinable and severe: "lumbar and cervical degenerative disc disease, rotator cuff tear and degenerative joint disease of right shoulder, diabetes with peripheral neuropathy, and obesity." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20.

---

[2] The record before the Court is approximately 600 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

[3] Plaintiff's initial social security filing listed October 23, 2020, as the date of her alleged onset of disability, but plaintiff amended her alleged onset date to May 13, 2021, in a prehearing brief to the ALJ authored by her first attorney. Tr. 270, 353. At the hearing, plaintiff's attorney reiterated the amending of the alleged onset date to May 13th, 2021, however, when the ALJ asked plaintiff "when was the last time you were able to work on a full-time basis?" plaintiff responded "October 27, two, two-and-a-half years ago . . . [s]omewhere around there, October a couple years ago. This October would be three years." referring to October 2020. Tr. 39, 40-41. In his decision, the ALJ refers only to the original alleged onset date of October 23, 2020, and does not mention the amended date. Tr. 16-29.

Page 2 – OPINION AND ORDER

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work except:

> [She] is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling, and climbing of ladders, ropes, or scaffolds. [Plaintiff] is limited to occasional overhead reaching with the right upper extremity. [Plaintiff] cannot have concentrated exposure to hazards, such as unprotected heights and moving mechanical parts.

Tr. 21.

At step four, the ALJ determined plaintiff is unable to perform her past relevant work. Tr. 26-27. At step five, the ALJ concluded, based on the VE's testimony, there were a significant number of jobs in the national economy plaintiff could perform despite her impairments, such as retail trade marker, routing clerk, and router. Tr. 27-28.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom statements; (2) improperly discounting the medical opinion of treating physician assistant Tiffany Nickerson, PA-C; and (3) failing to construct an RFC that reflects all of plaintiff's limitations.

## I.    Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is

Page 3 – OPINION AND ORDER

not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating his decision, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding on the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified she suffered from "a lot of back pain, a lot of pain in [her] hands, swelling in [her] hands." Tr. 43. She stated the pain was in her entire back, can spread to her arms and legs, and has "slowly and gradually got worse and got worse and got worse." Tr. 43-44. Plaintiff testified that sometimes she suffers a "really, really sharp stinging pain" that affects mostly her neck and arms that feels "almost like somebody's hammered a nail into my back of my neck." Tr. 58. She stated her pain makes it difficult for her to stand for long periods of time and transition from sitting to walking. Tr. 53, 51. Plaintiff testified that – because of her pain – every time she sits "for any real length of time" she must first stand and "brace herself against the wall" before she is able to walk. Tr. 51.

Page 4 – OPINION AND ORDER

After summarizing plaintiff's hearing testimony, the ALJ determined that her medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but her "allegations as to the nature, intensity, persistence, and limiting effects of those symptoms are not fully substantiated by the medical signs, laboratory findings and other evidence of record." Tr. 22. The ALJ cited to unremarkable objective medical evidence, conservative treatment, plaintiff's activities, and her "weak work history." Tr. 24-25.

The ALJ's first reason – "the objective medical evidence is unremarkable and inconsistent with the claimant's allegations" – is not a legally sufficient reason for the ALJ to discredit plaintiff's testimony. Tr. 24; *Kelly v. Berryhill*, 732 Fed.Appx. 558, 563 (9th Cir. 2018); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (holding an ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.") It is undisputed plaintiff suffers from lumbar and cervical degenerative disc disease,[4] and plaintiff's medical record reflects symptoms of pain, fatigue, numbness, and tingling repeatedly since June 2020. Tr. 366, 392, 394, 395, 399, 411, 414, 478, 480, 482, 517. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). In other words, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's testimony where, as here, the ALJ's other reasons are not supported by substantial evidence.

---

[4] *See Dahl v. Comm'r of Soc. Sec.*, 2015 WL 5772060, at *5 (D. Or. Sept. 30, 2015) (even "mild degenerative disc disease can have disabling effects") (collecting cases).

Page 5 – OPINION AND ORDER

The ALJ next refers to plaintiff's "routine and conservative" treatment as a reason to discount plaintiff's subjective symptom testimony.[5] Tr. 25. The ALJ highlights that plaintiff "has not sought any ongoing treatment from a neurosurgeon, rheumatologist, pain clinic, physiatrist, physical therapist, or other relevant specialty." *Id.* He argues "she testified at the hearing that she has health insurance and can obtain any treatment she feels she needs[6], so the lack of treatment shows she does not feel the need for treatment . . . ." *Id.*

It is well established that an ALJ must consider a claimant's reasons for not seeking treatment. *See* SSR 16-3p, available *at* 2017 WL 5180304 (ALJ may not find an "individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons [they] may not comply with treatment or seek treatment consistent with the degree of [their] complaints"). Here, the ALJ failed to consider that plaintiff's provider never recommended plaintiff seek treatment from a neurosurgeon, rheumatologist, pain clinic, or physiatrist. Rather, plaintiff followed her provider's treatment recommendations and had x-rays taken of her cervical and lumbar spine. Tr. 413, 440, 441. Furthermore, the ALJ failed to consider how plaintiff's

---

[5] The ALJ also cites plaintiff's noncompliance with treatment recommendations for diabetes. Tr. 25. This example of treatment noncompliance is irrelevant, however, because plaintiff's diabetes is unrelated to her degenerative disc disease. *See Chaudhry v. Astrue,* 688 F.3d 661, 672 (C.A.9 (9th Cir. 2012) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated....".) (quoting *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)).

[6] At the hearing – held telephonically – the ALJ asked "Yeah, Ms. [F], I just wanted to check on one thing. Do you have health insurance?" and plaintiff responded "Yes, I do." Tr. 59. The ALJ then asked "Okay. So you're able to get whatever treatment you feel like you need then?" and plaintiff responded "Yes, it is through the state of Oregon." *Id.* However, plaintiff previously reported her physical therapy focusing on low back and neck pain was limited "per insurance authorization" and Meadow Summers, PA-C, documented plaintiff's "poor access to medical care" as an anticipated barrier to treatment. Tr. 454, 460.

Page 6 – OPINION AND ORDER

constant pain and difficulty walking might impede her ability to seek treatment. Tr. 43, 44, 51, 58, 276, 311, 312, 410, 411, 454.

The ALJ's third reason – claimant's activities of daily living "are not entirely consistent with [her] reported limitations" – is also flawed. Tr. 25. "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Here, the ALJ provided examples of daily living that supposedly "reflect a high level of functioning" inconsistent with plaintiff's alleged disability such as: (1) caring for her dog, (2) sitting while cooking, (3) gardening, (4) caring for her mother, (5) sewing, (6) washing dishes, (7) going outside, (8) and deer hunting. Tr. 25.

The activities the ALJ identified above are compatible with plaintiff's alleged limitations – especially when considered within their full context – and thus cannot be used to attack plaintiff's credibility. See *Reddick*, 157 F.3d at 722; *see also Kelly*, 732 Fed.Appx. at 563 (holding an ALJ may not rely on daily activities stripped of critical nuance to discount plaintiff's subjective symptom testimony). For example, plaintiff sits while playing fetch with her dog and sits while cooking because she has difficulty standing for a long time. Tr. 53-54. When plaintiff gardens or sews, she can only do so for five or fifteen minutes at a time. Tr. 25, 454. While plaintiff helped care for her mother before she passed, the mother "manage[d] by herself for the most part." Tr. 277. Plaintiff's deer hunting was a hobby she enjoyed before her alleged disabilities, and she only hunted once in 2021 with her friends' assistance. Tr. 454.

Inconsistent daily activities may justify rejecting symptom testimony, nevertheless, "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from

Page 7 – OPINION AND ORDER

her credibility as to her overall disability." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). (alteration in original) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). One need not be relegated to vegetating in a dark room in order to be eligible for benefits. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2009) (citing *Cooper v. Bowen*, 815 F.2d 557, 661 (9th Cir. 1987)); *see also Orn*, 495 F.3d at 639 (ability to carry out minimal activities such as reading, watching television, and coloring in coloring books does not detract from allegation of overall disability); *Reddick,* 157 F.3d at 722 ("claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability").

The ALJ's final reason – plaintiff's "weak work history extending many years before her alleged disability onset . . . [suggests] the cause of her ongoing unemployment is likely something of longer standing than her current medical impairments" – is likewise insufficient. The ALJ cites no evidence in support of this rational except plaintiff's earning records. Tr. 25. *See David S. v. Comm'r of Soc. Sec.*, 2021 WL 1311235, *4 (W.D. Wash. Apr. 8, 2021) (finding the ALJ's reliance on the claimant's work history inadequate under analogous circumstances) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014)). Both plaintiff's hearing testimony and the evidence more generally demonstrate plaintiff's severe impairments prevent her from working. *See, e.g.*, Tr. 41, 43, 46, 51, 53, 55, 276, 278, 311, 388, 394-395, 460, 493, 548-553.

In sum, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's physical symptom testimony. The ALJ's decision is reversed as to this issue.

//

Page 8 – OPINION AND ORDER

## II.   Medical Opinion Evidence

Plaintiff next asserts the ALJ improperly discredited the opinion of Ms. Tiffany Nickerson, PA-C. Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[7] *Kevin R. H. v. Saul*, 2021 WL 4330860, \*4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

Ms. Nickerson treated plaintiff from 2018 to 2023 – seeing plaintiff approximately eight times per year – for plaintiff's diabetes, chronic pain, and other ailments. Tr. 548. In March 2023, Ms. Nickerson completed a "Physical Residual Function Capacity Statement" at the request of plaintiff's counsel, in which she stated the degree to which plaintiff's impairments affected plaintiff's functional abilities. Tr. 549-553. Such limitations included plaintiff being able to: sit for two hours at a time, stand for 30 minutes at a time, walk for 30 minutes at a time, "sit - only - in an 8-hour work day" for about two hours, and "stand and walk - only - in an 8-hour work day" for less than one hour. Tr. 550-551. Ms. Nickerson further stated: plaintiff would "sometimes need to take unscheduled breaks which would require being away from the work area during an 8-hour

---

[7] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

day" every one to two hours for an average of fifteen minutes to sit down or stand up, plaintiff's limitations would cause her to be "either unable to perform work and/or away from the work environment" for 25% of a 8-hour work day, plaintiff could be expected to perform a job "8 hours per day, 5 days per week on a sustained basis" at 70% efficiency, and ultimately, plaintiff would be "unable to obtain and retain work" due to her medical impairments and physical limitations. Tr. 552-553.

The ALJ determined Ms. Nickerson's "checkbox opinion unpersuasive, as it is poorly supported by her narrative explanation or treatment notes, and is inconsistent with the medical records."[8] Tr. 26. Additionally, the ALJ found Ms. Nickerson's medical opinion unpersuasive because of its inconsistencies with consultative examiner Meadow Summers, PA-C's Physical Disability Evaluation of plaintiff. Tr. 26.

An independent review of the record reveals that the ALJ's consideration of the supportability and consistency of Ms. Nickerson's opinion, along with the additional sub-factors, is not supported by substantial evidence. Despite his assertion to the contrary, some of the medical records the ALJ cites as "unremarkable, failing to support her opinion" support Ms. Nickerson's medical opinion. Tr. 26.[9] Therefore, the ALJ's finding that Ms. Nickerson's medical opinion is

---

[8] Due to Ms. Nickerson's extensive treatment history of plaintiff, the form of Ms. Nickerson's checkbox opinion is irrelevant to its persuasiveness. *See Garrison*, 759 F.3d at 1013-14 (ALJ erred by "fail[ing] to recognize that the opinions expressed in check-box form . . . were based on significant experience with [the claimant] and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit").

[9] Among plaintiff's medical records the ALJ cited as inconsistent with Ms. Nickerson's findings were records of: "[p]ain in her neck and lower back. Legs tingling. Numbness and tingling in the right arm and swelling" Tr. 411; an order of "HYDROcodone-acetaminophen (NORCO) 5-325 MG per tablet; Take 1-2 tablets by mouth every 6 (six) hours as needed for moderate pain or severe pain" Tr. 416; "[p]ositive for numbness (a few fingers on the right hand)" Tr. 476; "[i]mpingement: positive" Tr. 517; "[p]atient has history of . . . neuropathy, osteoarthritis,

Page 10 – OPINION AND ORDER

inconsistent with medical records is not supported by substantial evidence. Regardless, medical records conflicting with a medical opinion alone is not a sufficient reason to reject it. *Cf. Simmons v. Astrue*, 2012 WL 414000, *6 (D. Ariz. Feb. 9, 2021) ("[t]he relevant inquiry is not whether substantial evidence conflicts with a medical opinion, but instead whether the ALJ's decision to adopt [or reject an] opinion is supported by substantial evidence").

The ALJ's second reason for discounting Ms. Nickerson's medical opinion (inconsistent with Ms. Summer's Physical Disability Evaluation of plaintiff) is flawed. In the paragraph before the ALJ's assessment of Ms. Nickerson's medical opinion, he found Ms. Summer's opinion "unpersuasive, as it is poorly supported by her examination and inconsistent with other medical records." Tr. 26.

The ALJ committed reversible error in regard to the opinion of PA-C Nickerson. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (only mistakes "non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

### III.    RFC Determination

Plaintiff's final assignment of error is that the ALJ's RFC fails to account for all the evidence. The RFC must contemplate all medically determinable impairments – including those which the ALJ found non-severe – and evaluate all the relevant testimony including the opinions of medical providers and the subjective symptom testimony set forth by the claimant. 20 C.F.R. §§ 404.1545, 404.1545; SSR 96–8p. In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir.

---

lumbar back pain, chronic neck pain, tendinopathy of the right rotator cuff, arthritis of the right AC joint, incomplete tear of the right rotator cuff" Tr. 567.

Page 11 – OPINION AND ORDER

2008). Only those limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, plaintiff's arguments that the RFC failed to account for all her functional limitations are specifically tied to the ALJ's rejection of plaintiff's symptom testimony and the medical opinion of Tiffany Nickerson, PA-C. Thus, plaintiff has not articulated an independent error here; her success rises and falls on the success of her other assignments of error, already addressed above.

IV.     **Remedy**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence improperly rejected by the ALJ to determine whether a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to properly weigh evidence from plaintiff and Tiffany Nickerson, PA-C which rendered the RFC inaccurate. Without an accurate RFC and the corresponding hypotheticals posed to the VE, there is insufficient evidence to find plaintiff was disabled during the relevant dates. *See Strauss*, 635

Page 12 – OPINION AND ORDER

F.3d at 1138 (ALJ's reversible error did not warrant award of social security disability benefits, absent an affirmative finding claimant was, in fact, disabled).

As such, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the remote alleged onset date, coupled with a lack of MRI imaging of the cervical and lumbar spine, consultation with a medical expert concerning degenerative disc disease and further imaging would be helpful. Therefore, upon remand, the ALJ must consult a medical expert and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 31st day of March, 2025.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

Page 13 – OPINION AND ORDER